NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

ROCMOINE LINTON,

    *Plaintiff*,

v.

NEW JERSEY OFFICE OF THE ATTORNEY GENERAL, et al.,

    *Defendants*.

Civil Action No.: 24-09702

**OPINION**

December 31, 2025

**SEMPER**, District Judge.

The current matter comes before the Court on Defendants' New Jersey Office of the Attorney General ("NJOAG") and Patricia Shaw ("Shaw") (collectively, "Defendants") Motion to Dismiss *pro se* Plaintiff Rocmoine Linton's ("Linton" or "Plaintiff") Complaint (ECF 1, "Compl."). (ECF 13, "Def. Mot.") Plaintiff did not file any papers in opposition of Defendants' Motion. The Court has decided this Motion upon the submission of Defendants, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiff's Complaint is dismissed without prejudice.

**I.**     **FACTUAL BACKGROUND AND PRODUCURAL HISTORY**[1]

---

[1] The facts and procedural history are drawn from the Complaint and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the Complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

This suit arises from the denial of Plaintiff's request to be provided transcripts at public expense by the New Jersey Appellate Division. (Compl., ECF 1-1 at 1.) On February 17, 2021, Plaintiff was arrested for a domestic violence-related disorderly persons offense. (*Id*.) Plaintiff was ordered detained pending trial. (*Id*.) An attorney from the New Jersey Public Defender's Office, Lorane Posner ("Posner"), was appointed to represent Plaintiff in his criminal case. (*Id*.) On August 11, 2023, Plaintiff initiated a civil action against Posner for alleged malpractice (the "Malpractice Suit") arising from his pre-trial detention proceedings. (*Id*.) The NJOAG represented Posner in the Malpractice Suit. (*Id*.) On May 24, 2024, the Malpractice Suit was dismissed. (*Id*.)

Following the dismissal of the Malpractice Suit, Plaintiff filed an appeal with the New Jersey Appellate Division (the "Appellate Division"). Upon the commencement of his appeal, Plaintiff filed requests for a fee waiver and transcripts at public expense with the Appellate Division. (*Id*.) On August 19, 2024, Plaintiff's fee waiver request was granted, but his request for transcripts at public expense was denied. (*Id*.) On August 28, 2024, Plaintiff filed a motion for leave to appeal the Appellate Division's denial of his request for transcripts at public expense. (*Id*.) Plaintiff alleges that Shaw, the Appellate Division case manager for his appeal, "impeded the appeal by diverting it from its intended path, which should have involved a review by the relevant judges." (*Id*.) On September 16, 2024, Plaintiff received an email from Shaw, notifying him that his motion for leave to appeal was denied. (*Id*. at 1-2.) Plaintiff alleges that his motion for leave to appeal was not submitted to the Appellate Division judges "for their evaluation," which he argues puts his "appeal at risk of dismissal due to a lack of timely response." (*Id*. at 2.) Plaintiff also alleges that he notified Shaw's manager about his concerns regarding Shaw's alleged misconduct, and unsuccessfully attempted to reach out to other court clerks regarding his appeal. (*Id*.)

Plaintiff filed his Complaint in this action on October 9, 2024. (Compl.) In the Complaint, Plaintiff alleges that "[t]here is a pattern of unconstitutional practices involving government officials, and entities that discriminate based on race and gender, resulting in unfair treatment and equal protection under the law." (Compl., ECF 1-1 at 1.) Plaintiff alleges that Defendants' conduct violates the equal protection and due process clauses of the Fourteenth Amendment, and amounts to a violation of 18 U.S.C. § 242 for depravation of rights under the color of law. (Compl. at 3.) Plaintiff also sought a temporary injunction against Defendants to require them to "properly carry out [and execute] their duties." (*Id.* at 5.) On November 25, 2024, this Court denied Plaintiff's request for a temporary injunction. (ECF 7, ECF 8.) On March 24, 2025, Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Def. Mot., ECF 13-1 at 8.) On November 3, 2025, Plaintiff filed a letter requesting an extension of time to file an answer to the Motion to Dismiss, explaining that he did not respond to the Motion to Dismiss because he mistakenly thought that this Court's order denying Plaintiff's motion for a temporary restraining order constituted a dismissal of the entire case. (ECF 19.) The Court granted Plaintiff's request (ECF 20), and in lieu of an answer or responsive pleading to the Motion to Dismiss, Plaintiff filed a motion for leave to file an amended complaint.[2]

## II.   LEGAL STANDARDS

### A.  Fed. R. Civ. P. 12(b)(1)

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Where a defendant files a motion to dismiss invoking the Eleventh Amendment sovereign immunity defense, such a

---

[2] As set forth herein, this Court lacks subject matter jurisdiction over Plaintiff's claims, and as such, Plaintiff's motion for leave to file an amended complaint is denied as moot.

motion is analyzed under Fed. R. Civ. P. 12(b)(1). *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (Since "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction[,]" a motion invoking such a defense "may properly be considered a motion to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)"); *see also Saint-Jean v. Cnty. of Bergen*, 509 F. Supp. 3d 87, 97 (D.N.J. 2020).

Ordinarily, even where a plaintiff proceeds *pro se*, "once a 12(b)(1) challenge is raised, the burden shifts to the plaintiff to demonstrate the existence of subject matter jurisdiction." *See Towaki Komatsu v. NYP Holdings, Inc.*, No. 12-07088, 2013 WL 504602, at *1 (D.N.J. Feb. 7, 2013); *see also Lancaster v. New Jersey Transit Corp.,* No. 20-1995, 2021 WL 4473114, at *2 (D.N.J. Sept. 30, 2021). "However, because 'Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense,' and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability." *Saint-Jean*, 509 F. Supp. 3d at 97 (quoting *Garcia v. Knapp*, No. 19-17946, 2020 WL 2786930, at *3 (D.N.J. May 29, 2020)); *see also Christy v. Pennsylvania Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995); *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999).

When presented with a Rule 12(b)(1) motion to dismiss, "the Court must determine whether the defendant is making a 'facial or factual challenge to the court's subject-matter jurisdiction.'" *Garcia*, 2020 WL 2786930, at *3 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)); *see also Leadbeater v. JP Morgan* Chase*, N.A*, No. 16-7655 (JMV), 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017) ("In deciding a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or

factual attack because the distinction determines how the pleading is reviewed."). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (internal quotation marks and citations omitted). Conversely, a factual attack "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

"When a party moves to dismiss prior to answering the complaint...the motion is generally considered a facial attack." *Saint-Jean*, 509 F. Supp. 3d at 97 (quoting *Leadbeater*, 2017 WL 4790384, at *3). Further, where a defendant invokes an Eleventh Amendment sovereign immunity defense in a Rule 12(b)(1) motion to dismiss, the motion is generally considered a facial attack. *See Garcia*, 2020 WL 2786930, at *4 ("Defendants, by asserting Eleventh Amendment immunity, raise a facial 12(b)(1) challenge."); *see also Berk v. New Jersey Unemployment Ins.*, No. 23-12891, 2024 WL 4891749, at *2 (D.N.J. Nov. 26, 2024) ("Here, Defendant's motion asserts the defense of sovereign immunity under the Eleventh Amendment based on the facts as pled in the Complaint, thereby raising a facial attack."); *Perez v. New Jersey*, No. 14-4610, 2015 WL 4394229, at *3 (D.N.J. July 15, 2015).

A facial challenge under Rule 12(b)(1) is akin to a challenge under Rule 12(b)(6). *See Saint-Jean*, 509 F. Supp. 3d at 97 ("a [12(b)(1)] facial motion is handled much like a 12(b)(6) motion"); *see also Const. Party of Pa.*, 757 F.3d at 358 ("a [12(b)(1)] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)"]. Thus, when "reviewing a facial attack, the Court should consider only the allegations in the complaint, along with documents referenced therein and attached thereto, in the

5

light most favorable to the nonmoving party[,]" and "allegations in the complaint [shall be] accepted as true." *Saint-Jean*, 509 F. Supp. 3d at 97.

### B. Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure

to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

It is well established that a *pro se* complaint "however inartfully pleaded[,] must be held to less stringent standards than formal pleadings drafted by lawyers." *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002) (internal quotation marks and citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court is obligated to construe *pro se* claims liberally and afford *pro se* plaintiffs the benefit of every doubt. *Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005). Notwithstanding, plaintiff's claims must also be supported by "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 further requires that a complaint's allegations be "simple, concise, and direct." Fed. R. Civ. P. 8(d). Although Rule 8's requirements likewise apply "flexibl[y]" to a *pro se* plaintiff, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013), a plaintiff is "not absolved from complying with *Twombly* and the federal pleading requirements merely because [he] proceeds *pro se*." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

### III. ANALYSIS

Defendants assert that the Complaint should be dismissed because the NJOAG, and Shaw in her official capacity, are immune from suit pursuant to Eleventh Amendment sovereign immunity. (Def. Mot., ECF 13-1 at 10.) Defendants further assert that the NJOAG, and Shaw in her official capacity, are not persons subject to liability under 42 U.S.C. § 1983, Plaintiff failed to allege sufficient facts to support his due process and equal protection claims, and that Shaw is immune from suit based on the doctrine of quasi-judicial immunity. (*Id.* at 14-23.) Defendants also contend that 18 U.S.C. § 242 "does not provide a litigant with a private cause of action." (*Id.* at 7

n.4.)[3] Plaintiff alleges that his rights under the Fourteenth Amendment's due process and equal protection clauses were violated, and that Defendants' actions deprived him of his rights under the color of law in violation of 18 U.S.C. § 242. (Compl. at 3.)

### A. Eleventh Amendment Sovereign Immunity

The Eleventh Amendment of the U.S. Constitution states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. CONST. amend. XI. Notwithstanding this language, the Supreme Court has long interpreted the Eleventh Amendment to immunize states, absent their consent, from federal suits brought by their own citizens as well. *See, e.g.*, *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) ("This Court has drawn upon principles of sovereign immunity to construe the [Eleventh] Amendment to establish that an *unconsenting State is immune from suits brought in federal courts by her own citizens* as well as by citizens of another state.") (internal quotation marks and citations omitted) (emphasis added). Further, "the [Supreme] Court [has] held that the Eleventh Amendment applies to suits against subunits of the State." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). To this end, "a suit may be barred [by the Eleventh Amendment] even though the state is not named a party to the action, as long as the state is the real party in interest." *Carter*, 181 F.3d at 347 (quoting *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 65[9] (3d Cir. 1989) (internal quotation marks omitted).

---

[3] Defendants also argue that Plaintiff's request for injunctive relief is barred by the *Rooker-Feldman* doctrine. (Def. Mot., 13-1 at 3, 24-26.) This Court has already denied Plaintiff's request for injunctive relief (*see* ECF 7, ECF 8), and need not further address this issue here.

Courts in the Third Circuit apply the following three-factor test (the "*Fitchik* Factors") to determine whether an entity is a subunit of the state for purposes of the Eleventh Amendment:

(1) Whether the money that would pay the judgment would come from the state (…whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);
(2) The status of the agency under state law (this includes four factors—how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and
(3) What degree of autonomy the agency has.

*Fitchik.*, 873 F.2d at 659; *see also Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d at 198. No one factor is dispositive; rather, courts must balance each of the three factors. *See Stephens v. Grewal*, No. 22-01989, 2023 WL 3478458, at *4 (D.N.J. May 15, 2023), *reconsideration denied*, No. 2201989KMWMJS, 2023 WL 9043934 (D.N.J. Dec. 29, 2023) ("An entity does not need to meet all three factors for immunity to apply; the Court is responsible to balance the factors, which have equal weight, after a highly fact intensive review."); *see also Maliandi v. Montclair State Univ.*, 845 F.3d 77, 84 (3d Cir. 2016) ("[w]e now treat all three *Fitchik* factors as co-equals").

Here, Eleventh Amendment sovereign immunity applies to the NJOAG. Courts in this District have consistently held that the NJOAG is a subunit of the state of New Jersey, and, thus, is entitled to Eleventh Amendment sovereign immunity. *See Hockaday v. New Jersey Att'y Gen.'s Off.*, No. 16-0762, 2016 WL 6694483, at *6 (D.N.J. Nov. 14, 2016) ("The [New Jersey] Attorney General's Office…[is] indisputably [a] subunit of the State[] entitled to Eleventh Amendment immunity.") (internal quotation marks omitted); *see also Rahman v. NJ Att'y Gen., New Jersey State Police*, No. 22-04703, 2023 WL 6048808, at *3 (D.N.J. Apr. 10, 2023) (dismissing *pro se* plaintiff's complaint against the NJOAG because "it is well established" that the NJOAG is

"entitled to Eleventh Amendment immunity" as a subunit of the State of New Jersey); *Polanco v. New Jersey Atty. Gen.'s Off.*, No. 12-778, 2013 WL 1339127, at *3 (D.N.J. Mar. 28, 2013) ("suits against the New Jersey Attorney General's Office…are suits against the state itself, and are prohibited by the Eleventh Amendment"); *El v. Atl. City Freeholders Bd. of Commissioners*, No. 22-6281, 2023 WL 8271768, at *6 (D.N.J. Nov. 30, 2023) ("The Office of the Attorney General of New Jersey is...entitled to Eleventh Amendment immunity."). Further, to the extent that Plaintiff has brought this suit against Shaw in her official capacity as the case manager assigned to Plaintiff's Appellate Division case, such suit is also barred by Eleventh Amendment sovereign immunity. *See Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010) ("the state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and [are] therefore considered 'arms' of the state"); *see also Robinson v. New Jersey Mercer Cnty. Vicinage-Fam. Div.*, 514 F. App'x 146 (3d Cir. 2013) (upholding district court's dismissal of *pro se* plaintiff's claims against the Family Division of the Superior Court of New Jersey, Mercer Vicinage, and its employees in their official capacities, since the court was "clearly a part of the State of New Jersey[,]" and, thus, "both the court itself and its employees in their official capacities were unconsenting state entities entitled to immunity under the Eleventh Amendment").

Because Eleventh Amendment sovereign immunity applies to the NJOAG and Shaw in her official capacity, Plaintiff's Complaint fails pursuant to Fed. R. Civ. P. 12(b)(1).

**B. Section 1983**

42 U.S.C. § 1983 ("Section 1983") states in relevant part that:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added). Section 1983 provides a remedy for individuals whose federal constitutional rights have been violated by persons or entities acting under the color of state law. *See Cooper v. Cape May Cnty. Bd. of Soc. Servs.*, 175 F. Supp. 2d 732, 742–43 (D.N.J. 2001). To state a claim for relief under Section 1983, a plaintiff must allege that the defendant: (1) violated a right secured by the Constitution or laws of the United States; and (2) the alleged deprivation was committed or caused by a person acting under color of state law. *Mikhaeil v. Santos*, 646 F. App'x 158, 161-62 (3d Cir. 2016) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Plaintiff alleges that Defendants violated his equal protection and due process rights under the Fourteenth Amendment. (Compl. at 3.) Defendants contend that the NJOAG, and Shaw in her official capacity, are not persons amenable to suit under Section 1983. (Def. Mot., ECF 13-1 at 14-16.) Defendants further argue that Plaintiff has failed to establish equal protection and due process claims. (*Id*. at 19-23.)

### 1.  Persons Under Section 1983

The Supreme Court has long held that a State, as well as state officials in their official capacities, are not "persons" amenable to suit under Section 1983. *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). State agencies are also not considered "persons" under Section 1983. *See id.* at 60-61, 71 (upholding Michigan Supreme Court ruling that the Michigan Department of State Police was not a "person" under Section 1983); *see also Landi v. Borough of Seaside Park*, No. 07-5319, 2009 WL 606141, at \*6 (D.N.J. Mar. 9, 2009) ("a cause of action brought pursuant to § 1983, cannot be asserted against the State, [or] its agencies"); Mitchell v. Cnty. of Bergen, No. 23-596, 2024 WL 1526121, at \*3 (D.N.J. Apr. 9, 2024).

11

Here, neither the NJOAG nor Shaw in her official capacity are "persons" under Section 1983. *See Higgs v. Dep't of Corr.*, No. 23-23402, 2024 WL 1366474, at *2 (D.N.J. Mar. 29, 2024) (dismissing *pro se* plaintiff's Section 1983 claim against the NJOAG since "the Office of the Attorney General for the State of New Jersey [is] not a 'person' amenable to suit under § 1983"), *aff'd sub nom. Higgs v. New Jersey Dep't of Corr.*, No. 24-1712, 2024 WL 3811985 (3d Cir. Aug. 14, 2024); *see also Dawkins v. Off. of Att'y Gen.*, No. 18-11174, 2018 WL 6322618, at *2 (D.N.J. Dec. 4, 2018) (dismissing *pro se* plaintiff's Section 1983 action against the NJOAG because the NJOAG is not a "person[] within the meaning of 42 U.S.C. § 1983") (internal quotation marks omitted); *Baquero v. Mendoza*, No. 18-15081, 2019 WL 3712201, at *3 n.3 (D.N.J. Aug. 6, 2019) (noting that state officials, including state judicial officers and employees, are not "persons" under Section 1983), *aff'd*, 828 F. App'x 137 (3d Cir. 2020). Accordingly, Plaintiff's Section 1983 claims against the NJOAG must fail as a matter of law, as do Plaintiff's Section 1983 claims against Shaw, to the extent that she has been sued in her official capacity.

### 2. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall…deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1; *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (Feb. 2, 2016). "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination....They must demonstrate that they received different treatment from that received by other individuals similarly situated." *Holley v. Port Auth. of N.Y. & N.J.*, No. 14-7534, 2018 WL 4953008, at *2 (D.N.J. Oct. 12, 2018) (quoting *Chambers ex rel. Chambers v. Sch. Dist. Of Phila.*, 587 F.3d 176, 196 (3d Cir. 2009)); *see also Callaway v. Small*, 576 F. Supp. 3d 232, 248 (D.N.J. 2021).

In his Complaint, Plaintiff alleges in a conclusory fashion that "[t]here is a pattern of unconstitutional practices involving government officials, and entities that discriminate based on race and gender, resulting in unfair treatment and equal protection under the law." (Compl., ECF 1-1 at 1.) However, Plaintiff has failed to provide any facts supporting his assertion that the NJOAG and Shaw violated his equal protection rights by purposefully discriminating against him based on his race and gender. In fact, Plaintiff's only factual allegation as to Shaw is that he received an email from Shaw on September 16, 2024, merely notifying him that his motion for leave to appeal had been rejected. (*Id.* at 1-2.) This Court need not accept Plaintiff's "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). Further, rather than providing a factual basis for his equal protection claim, Plaintiff uses his Complaint to express dissatisfaction with what he believes are disfavorable state court rulings against him, such as the dismissal of the Malpractice Suit, and the denial of his request to be provided transcripts at public expense. (*See* Compl., ECF 1-1.) The proper avenue for Plaintiff to challenge these state court rulings is the appellate process rather than a suit in federal district court. *See Fam. C.L. Union v. State*, 386 F. Supp. 3d 411, 442 (D.N.J. 2019) ("a federal district court is not to appoint itself a *de facto* court of appeal to correct [alleged] errors in state court proceedings"), *aff'd sub nom. Fam. C.L. Union v. Dep't of Child. & Fams., Div. of Child Prot. & Permanency*, 837 F. App'x 864 (3d Cir. 2020). Accordingly, since Plaintiff's Complaint, construed liberally, does not provide a factual basis to plausibly show that he was subjected to "purposeful discrimination" based on his race and gender, Plaintiff's equal protection claim must fail. *See Holley*, 2018 WL 4953008, at *2.

### 3. Due Process Claim

13

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall… deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Due Process Clause "confers both substantive and procedural rights." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Regarding substantive due process claims under Section 1983, "[t]he Third Circuit has recognized that two very different threads make up the fabric of substantive due process: substantive due process relating to legislative action and substantive due process relating to non-legislative action." *Chey v. LaBruno*, 608 F. Supp. 3d 161, 180 (D.N.J. 2022) (quoting Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 155 (3d Cir. 2018)).[4] To state a non-legislative substantive due process claim under Section 1983, a Plaintiff "must allege [that he] has 'a property interest protected by the substantive due process clause, and the government's deprivation of that protected interest shocks the conscience.'" *Chey*, 608 F. Supp. 3d at 180 (quoting *Joey's Auto Repair & Body Shop v. Fayette Cnty.*, 785 F. App'x 46, 49 (3d Cir. 2019)). "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

Here, Plaintiff's complaint, construed liberally, fails to plead either a substantive or procedural due process claim. As to substantive due process, Plaintiff's Complaint does not provide any factual basis showing that the NJOAG or Shaw engaged in conscience shocking behavior or deprived him of a protected property interest. *See Chey*, 608 F. Supp. 3d at 180.

---

[4] Since Plaintiff has alleged due process violations by the NJOAG, an executive branch entity of the state of New Jersey, and Shaw, a New Jersey judicial branch employee, this Court will analyze Plaintiff's due process claim as a non-legislative substantive due process claim.

Instead, Plaintiff alleges in a conclusory fashion that Shaw "impeded the appeal by diverting it from its intended path" merely by notifying Plaintiff that his motion for leave to appeal had been denied. (*See* Compl., ECF 1-1 at 1-2.) Further, when discussing the denial of his request for transcripts at public expense and his subsequent motion for leave to appeal in the Statement of Claim section of his Complaint, Plaintiff does not even mention the NJOAG or any of its employees. (*See id.*)

As to procedural due process, the Third Circuit noted in *Alvin* that:

> [A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them. A due process violation is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.

227 F.3d at 116 (internal quotation marks and citations omitted). As Defendants note in their Motion, on August 28, 2024, Shaw advised Plaintiff via email that his motion for leave to appeal the denial of his request for transcripts at public expense should be filed with the New Jersey Supreme Court. (Def. Mot., ECF 13-1 at 22; ECF 13-2, Ex. K.) Instead of heeding this advice and seeking recourse with the appropriate higher court, Plaintiff initiated this current action roughly three and a half weeks after the Appellate Division denied his motion for leave to appeal. (*See* Compl.; Def. Mot., 13-1 at 6-7, 22-23; ECF 13-2, Ex. I.)

For the aforementioned reasons, Plaintiff has failed to plead a substantive or procedural due process claim.

### C. Quasi-Judicial Immunity

"[Q]uasi-judicial immunity is a doctrine under which government actors whose acts are relevantly similar to judging are immune from suit…Quasi-judicial absolute immunity attaches

when a public official's role is functionally comparable to that of a judge." *Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006) (internal quotation marks and citations omitted). "[A]ctions taken by judicial staff in aid of the court are also protected by absolute quasi-judicial immunity." *Kamdem-Ouaffo v. Colgate Palmolive Co.*, No. 22-6623, 2023 WL 7151580, at *4 (D.N.J. Oct. 31, 2023), *aff'd*, No. 23-2982, 2024 WL 3250938 (3d Cir. July 1, 2024), *cert. denied*, 145 S. Ct. 1315, 221 L. Ed. 2d 399 (2025); *see also Stephens v. Martini*, No. 22-1971, 2022 WL 1237786, at *3 n.3 (D.N.J. Apr. 26, 2022) (noting that quasi-judicial immunity "extend[s] to those functioning as an arm of the court or who are acting at the direction of the judge[,]" such as "law clerks, *case managers*, administrators, or other court staff") (emphasis added). Quasi-judicial immunity may apply where a quasi-judicial official has been sued in his or her individual capacity. *See Russell v. Richardson*, 905 F.3d 239, 246 n.6 (3d Cir. 2018); *see also Dotzel*, 438 F.3d at 327 (finding that Appellants "were acting in a quasi-judicial capacity, and [, thus,] are absolutely immune from suit in their *individual capacities*") (emphasis added);

Here, this Court finds that quasi-judicial immunity applies to Shaw. Shaw was acting "as an arm of the court" and "in aid of the court" when she notified Plaintiff that his motion for leave to appeal had been received, that his motion should instead be filed with the New Jersey Supreme Court, and that his motion was denied. *See* Stephens, 2022 WL 1237786, at *3 n.3; *Kamdem-Ouaffo*, 2023 WL 7151580, at *4; (*see also* Def. Mot., ECF 13-2, Ex. K; Compl., ECF 1-1 at 1-2.) Thus, to the extent Shaw has been sued in her individual capacity, Plaintiff's claims against her must be dismissed. *See Dotzel*, 438 F.3d at 327.

### D. 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law

18 U.S.C. § 242 ("Section 242") provides in relevant part that:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State…to the deprivation of any rights,

> privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 242. Section 242 is a criminal statute, and does not provide a private right action. *See Washington v. Grace*, 445 F. App'x 611, 615 (3d Cir. 2011) ("[t]o the extent that [*pro se* Plaintiff-Appellant] Washington attempted to sue under 18 U.S.C. § 242…that statute does not create a private right of action"); *see also Lampon-Paz v. Dep't of Just.*, No. 17-6395, 2017 WL 4030577, at *1 (D.N.J. Sept. 12, 2017) ("18 U.S.C. § 242…is a criminal statute, which does not contain a private right of action"); *Davis v. Norwood*, 614 F. App'x 602, 605 (3d Cir. 2015) ("18 U.S.C. § 242, which criminalizes the deprivation of rights under color of law, does not provide a private right of action"). Accordingly, Plaintiff's Section 242 claim must be dismissed.

### IV.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiff's Complaint is dismissed with prejudice. An appropriate order follows.

*/s/ Jamel K. Semper          .*
**Hon. Jamel K. Semper**
**United States District Judge**

Orig:      Clerk
cc:         Cari Fais, U.S.M.J.
             Parties